**NATIONAL LABOR RELATIONS BOARD**

v.

**BOSTON HERALD-TRAVELER CORP.**

No. 4781.

United States Court of Appeals First Circuit.

Jan. 28, 1954.

Robert E. Greene, Chief Law Officer, First Region, Boston, Mass. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Frederick U. Reel and Peter Bauer, Washington, D. C., with him on brief), for petitioner.

Frank W. Crocker, Boston, Mass. (Ropes, Gray, Best, Coolidge & Rugg, Boston, Mass., with him on brief), for respondent.

Before MAGRUDER, Chief Judge, WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This petition for enforcement of an order of the National Labor Relations Board in our view presents an issue of interpretation. It is whether the order

in question requires the Respondent, a Massachusetts corporation engaged in the business of publishing a daily morning, a daily afternoon, and a Sunday newspaper, to provide the Union which represents all the employees in the Respondent's editorial, commercial, advertising and building maintenance departments, exclusive of corporate officers and enumerated personnel holding executive and supervisory positions, with wage data of all the employees in the unit linking the name of each employee with his or her salary.

There can be no question of the Board's jurisdiction or of ours. Nor can there be any question that the charging Union, Newspaper Guild of Boston, Local 32, American Newspaper Guild, CIO, is, and since 1938 has been, the bargaining representative of the Respondent's employees in the unit described above.

It is undisputed that the relations between the Respondent and the Union have always been very good, but nevertheless a dispute over the Respondent's duty to provide the Union with the wage data of the employees in the unit arose late in 1951 in preliminary negotiations for a collective bargaining agreement for the next calendar year. The Executive Secretary of the Union on November 21, 1951, wrote a letter to the Assistant to the Publisher, who was authorized to speak for the Respondent in labor matters, asking for "complete payroll information so that we will know what are our rights under Wage Stabilization and so that we will be able to bargain intelligently on wages and pensions. Such information would include names, classification, date of birth, date of employment, sex and weekly salary." The Assistant to the Publisher refused to provide the Union with the data it requested. Nevertheless bargaining conferences between the Respondent and the Union took place in the course of which the Union withdrew its request for information as to age, sex and date of employment, that data being available to it as the result of a pension study undertaken by the Respondent, and the Respondent receded from its position by providing data ac-

ceptable to the Union from which it could compile a complete roster of all permanent employees in the unit. On the basis of the foregoing data a new collective bargaining agreement was signed on February 21, 1952, retroactive to the first of the year.

In the meantime, however, on January 5, 1952, the Union had filed a charge against the Respondent alleging that the latter had refused to bargain with the Union in violation of § 8(a) (1) and (5) of the Labor Management Relations Act, 1947, 61 Stat. 136, 140, 141, 29 U.S.C.A. § 158(a) (1) and (5), by refusing to furnish the Union with the "names, classifications and weekly salaries of all the employees in the bargaining unit." A complaint issued on the charge on March 18, 1952, and the usual proceedings were had thereon.

As a result of those proceedings the Trial Examiner found in accordance with the complaint that the Respondent, in violation of the section of the Act set out above, had refused to bargain with the Union as the exclusive representative of the employees in the unit in question. He accordingly recommended an order in the usual form requiring the Respondent to furnish the Union upon request with "wage data concerning names, work classifications, dates of employment, and salaries of all employees" in the unit.

The Respondent filed exceptions to the intermediate report and the three-member panel of the Board to which the case was referred found merit in the Respondent's contentions and modified the order recommended by the Trial Examiner. The Board first found that the Respondent had not refused to furnish the Union with the dates of employment of the employees in the unit, and then it went on to say:

"Although finding that the Union's request for names of employees was complied with by the Respondent to the Union's satisfaction, the Trial Examiner concluded that the Respondent refused to furnish such names. The Respondent excepts to this conclusion as inconsistent with the prior finding. We agree. In

view of the Union's acceptance of the data furnished as adequate for its purpose, we do not find that the Respondent refused to furnish names of employees."

Wherefore the Board entered the order which it seeks to have enforced wherein it directed the Respondent only to furnish the Union upon request with "wage data concerning work classifications and salaries" of all the employees in the unit represented by the Union. Upon the issuance of the Board's order the Respondent disclosed the salaries paid in each job classification, and the number of employees receiving each salary, in the form of a tabulation, a sample of which appears in the margin.[1] The question is whether this tabulation complies with the order entered by the Board.

The Respondent does not, nor can it, question the Board's power in appropriate cases to require disclosure of individual data concerning the employees in the unit represented by the Union. N. L. R. B. v. Leland-Gifford Co., 1 Cir., 1952, 200 F.2d 620, 624 and cases cited. Nor does it dispute that such data, for the purpose of this case, should include the actual wages being paid in each employee classification in the unit. Its contention is that neither the Board's order, nor good faith bargaining in this particular case, requires it to give individual wage data specifically linking the name of each employee with his or her actual salary. Wherefore it contends that the data supplied in the tabulation referred to above complies with the order of the Board.

Counsel for the Board disagree. They concede, as they must, that the order entered by the Board is couched in more general terms than the one recommended by the Trial Examiner. They contend, however, that it is specific enough to require the Respondent to provide the Union with the individual wage data of the employees in the unit showing names linked with salaries. Counsel say that the Board modified the Trial Examiner's recommended order by omitting "names" from the list of items required to be disclosed to the Union only because the Union by its own admission had in fact been furnished with adequate data from which to compile a complete roster of the employees in the unit, and that the order as it stands requires the Respondent to link the names of employees with their salaries because it requires disclosure of "classifications and salaries of all employees." Furthermore, they say that since the question of the Respondent's duty to furnish names linked with salaries was a principal bone of contention throughout the proceeding, the Board would not have disagreed with the Trial Examiner's conclusion on that issue without saying so in terms too clear to be misunderstood.

There is some force in the argument. But there is also good basis for the Respondent's counter argument, which is that it cannot be assumed that the Board inadvertently omitted "names" from the list of matters to be disclosed, but on the contrary it must be assumed that the omission was deliberate and for the express purpose of not requiring disclosure of names linked with salaries for the reason that this is not an appropriate case for such a disclosure. It is said that this case is inappropriate for disclosure of specific names and salaries because such disclosure violates not only the privacy of the employer but also the privacy of employees with respect to rates of pay,[2] and we are not to assume that the Board would invade personal privacy

---

1 *Classification* — *No. of Employees* — *Salaries*

Accounts Payable
Clerk — 1 — @ $76.00 per week
Addressograph
Clerk — 8 — 2 @ 36.50 per week
1 @ 44.50 " "
3 @ 48.30 " "
2 @ 58.50 " "

2. Furthermore it is suggested, and counsel for the Board concede, that privacy in this matter is more highly prized by employees in the higher income brackets, and the unit involved includes employees ranging from those in the lower clerical and maintenance classifications to one drawing $15,000 per year.

without having some good reason which is lacking here for the Respondent and the Union amicably reached an agreement, apparently satisfactory to both, without the benefit of specific individual wage data.

There is certainly force in the Respondent's argument. Indeed, we find it more persuasive than that advanced by counsel for the Board. Furthermore, we think that if the Board had meant to invade privacy by requiring disclosure of individual names joined with actual salaries, it would have said so in unmistakable terms. Also, since the Board had free choice of the language in which to express itself, perhaps ambiguities in the terms of an order issued by the Board should be resolved against it, particularly in cases in which the Board can very easily say precisely what it means. We, therefore, interpret the Board's order not as requiring disclosure of names of the employees in the unit linked with their salaries, but only as requiring disclosure of the salaries paid in each job classification, and the number of employees receiving each salary, such as was made in the tabulation submitted to the Union by the Respondent after the Board entered its order.

A decree will be entered enforcing the order of the Board.